**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**UNITED STATES OF AMERICA**

      **vs.**                                           **CASE NO.: 5:09CR30-4**

**MICHAEL REED**

_____

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

Now comes the United States of America, by and through the undersigned Assistant United States Attorney, and provides this response to Defendant's Sentencing Memorandum:

**I.    Overview**

In his Sentencing Memorandum, Reed asks this Court for a traditional downward departure based on his: (1) employment history; (2) family responsibilities; (3) public service; and (4) aberrant conduct. Reed further argues that, pursuant to the factors set forth in 18 U.S.C. § 3553(a), he should be sentenced to a term of probation or, at most, a term of 12-18 months' imprisonment followed by community service. In support of such a low sentence, he argues that he has lost his medical license and ability to practice medicine for at least 15 years; has lost his medical income, his business, his medical identity, and his reputation; and has suffered mental health problems. He further argues that he has no criminal history or long-term involvement in drug trafficking.

Because Reed's case is not outside of the heartland of cases, any downward departure

is inappropriate. Furthermore, the § 3553(a) factors support a Guidelines sentence in this case.

## II. Requests for Traditional Downward Departure

A downward departure is appropriate if the Court finds an aggravating or mitigating circumstance that the U.S. Sentencing Commission did not adequately consider when creating the Guidelines. *See* 18 U.S.C. § 3553(b); Guideline § 5K2.0. But the circumstances justifying the departure must be significantly different than the "heartland" of cases considered by the Guidelines. *See United States v. Miller*, 146 F.3d 1281, 1284 (11th Cir. 1998)(citing *United States v. Onofre-Segarra*, 126 F.3d 1308, 1310 (11th Cir. 1997)). "A district court decides whether a case falls outside of the heartland of a particular guideline by assessing the facts of the case and comparing those facts to the facts of other cases which fall within the guideline's heartland. Departures should only occur in unusual cases where there is something atypical about the defendant or the circumstances surrounding the commission of the crime." *Id.*

### A. Employment Record

Reed first argues that, pursuant to Guideline § 5H1.5, he is entitled to a downward departure based upon his employment history. He contends that his extraordinary employment history and medical service to this community make him unique and warrant a below-Guidelines sentence. *See* Def.'s Sent. Memo at 21.

Guideline § 5H1.5 provides that "[e]mployment record is not ordinarily relevant in determining whether a departure is warranted [but] may be relevant in determining the

conditions of probation or supervised release..." In this case, Reed is a physician and has performed many successful surgeries, but that was his job. There is nothing extraordinary about a defendant with legitimate employment ably performing his job, while engaging in criminal conduct on the side.

However, even if the Court were to conclude that Reed's employment history was exceptional, this is still no basis for departure. *See Miller,* 146 F.3d at 1285. In *Miller*, the defendant had a distinguished educational and employment background. *Id.* He had graduated from the U.S. Military Academy with honors, from Columbia University *magna cum laude* with a master's degree in international affairs, from the University of Florida *magna cum laude* with a doctorate in philosophy in Inter-American studies, from Biscayne College *magna cum laude* with a master's degree in sports administration, and from the University of Miami Law School *magna cum laude*. *See id.* at n.1. Moreover, the defendant had a distinguished military career and had served in Vietnam, received a Bronze Star, and was honorably discharged as a captain. *See id.* He also had an extremely high IQ. *See id.* The defendant argued that his case was outside the heartland of cases because of his education, military background, and intelligence. *See id.* at 1285. The Eleventh Circuit rejected this argument, holding that, although "the defendant's superior education, military performance, and intelligence [were] exceptional[,] these are not characteristics upon which a departure can be based." *Id.* (citing Guideline §§ 5H1.2, 5H1.5).

Because employment record is not a basis for a downward departure, Reed's request that his sentence be reduced, pursuant to Guideline § 5H1.5, must be denied.

B.  Family Responsibilities and Community

Reed next argues for a downward departure, pursuant to Guideline § 5H1.6, based upon his family ties and his "gift as a surgeon." *See* Def.'s Sent. Memo at 21-22. He states that he provides over $7200 in child support for his three children and $1000 in alimony monthly, that his incarceration would cause financial hardship, and that his contentious divorce and current case require him to be close to his children. *See id.*

Guideline § 5H1.6 provides that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." And Reed's familial responsibilities to his family are not unique.

First, Reed is not the sole provider for his children. Reed's ex-wife is also a physician, who has the ability, unlike many spouses (or ex-spouses) of incarcerated defendants, to independently support their children - though quite obviously not at the current level without Reed's continued child-support payments.

Second, like any incarcerated father, Reed naturally would like to avoid incarceration to remain close with his children, and of course children are better served when a parent can be present and involved. However, the negative impact that incarceration has on families is a unfortunate consequence of a parent's decision to engage in criminal conduct. It is by no means unique. Consequently, Reed's family responsibilities provide no basis for departure in this case. *See U.S. v. Devegter*, 439 F.3d 1299, 1307 (11th Cir. 2006)(holding that dyslexic son's need for tutoring and need to care for ailing mother-in-law were not extraordinary); *U.S. v. Mogel*, 956 F.2d 1555, 1565 (11th Cir. 1992)(holding that defendant with "two minor

children to support, and a mother that lives with" her is not extraordinary); *U.S. v. Cacho,* 951 F.2d 308, 311 (11th Cir. 1992)(noting that having minor children to care for is not extraordinary).

  C. Public Service

Reed next argues that the Court should depart downward, pursuant to Guideline § 5H1.11, based upon his public service. *See* Def.'s Sent. Memo at 23-24. The public service that he points to his employment as a medical doctor in this community where "his employment has provided this community an amazing gift." *Id.*

Guideline § 5H1.11 states that "[m]ilitary, civic, charitable, or public service; employment-related contributions; and similar prior good works are not ordinarily relevant in determining whether a departure is warranted." Despite his statements to the contrary, nothing about Reed's "public" service makes him extraordinary.

Certainly the community is benefitted by having a talented surgeon practicing within it, but to call this work "public" service is, at a minimum, misleading. Reed is a private physician, who was well compensated at over $100,000 per month or over $1,200,000 per year. *See* Def. Sent. Memo at 6. He now asks this Court to reduce his sentence because he did the job that he was paid to perform in a private capacity. Again, because Reed was providing the services that he was trained and paid to do, his case is not so exceptional as to remove it from the heartland of cases. As a result, his request for a downward departure based on his "public" service must be denied.

  D. Aberrant Behavior

Reed next argues that his sentence should be reduced, pursuant to Guideline § 5K2.0, because the circumstances surrounding his offense were aberrant. *See* Def.'s Sent. Memo at 24-25. He contends that his sentence should be reduced on this basis because, prior to the instant offense, he was law-abiding and a productive citizen. *See id.* at 25.

"To qualify for an 'aberrant behavior' departure, (1) the case must be 'extraordinary,' [and] (2) the defendant's conduct must constitute 'aberrant behavior.'" *United States v. Orrega*, 363 F.3d 1093, 1096 (11th Cir. 2004). "A defendant's conduct is aberrant behavior if that conduct constitutes a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law abiding life." *Id.* *See Devegter*, 439 F.3d at 1306 (noting that repeated acts of wrongdoing spanning months is not aberrant).

In this case, Reed did not just buy a single kilogram of cocaine. Rather, he bought two kilograms of cocaine between February and May 2009. Reed not only bought these kilograms of cocaine, but over a period of months, Reed distributed cocaine to co-defendant Hector Melara. Reed's criminal conduct was not limited to a single incident on a single occasion. Instead, Reed engaged in drug trafficking for months. Moreover, at the time Reed began his drug trafficking, he was not leading an otherwise law-abiding life. By that point, Reed had been a regular cocaine user, who was consistently buying cocaine from Melara.

Because Reed's criminal conduct spanned months, was not a single criminal occurrence, and did not represent a marked deviation from an otherwise law-abiding life,

6

he is not entitled to a reduced sentence, pursuant to Guideline § 5K2.0, because the circumstances surrounding his offense were not aberrant.

**III.     Section 3553(a) Factors**

Reed next argues for a lenient sentence based on the factors set forth in 18 U.S.C. § 3553(a). Title 18, United States Code, Section 3553(a) provides that the "court shall impose a sentence sufficient, but not greater than necessary," in light of the nature and circumstances of the offense and the history and characteristics of the defendant.  To make this determination, the court must consider the need for the sentence to: (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (2) provide adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a).

      A.     <u>The Nature of the Offense</u>

Reed has been convicted of drug conspiracy.  This drug conspiracy involved numerous people.  It involved Reed's purchase of two kilograms of cocaine from Melara and his distribution of a part of one kilogram of cocaine back to Melara. In addition, however, Reed, Melara, and co-defendant Dario Espinosa discussed importing large quantities of cocaine from Belize into the United States.  Although the government agrees with the Probation Officer that scheme never came to fruition and should not be calculated into Reed's offense level, it nonetheless shows that Reed's interest in drug trafficking was

7

strong and was not isolated to his kilogram purchases.

With the two kilograms of cocaine, Reed faces a mandatory minimum sentence of five years' imprisonment, but he has no criminal history and meets the other criteria of Guideline § 5C1.2 and 18 U.S.C. § 3553(f). As a result, he is safety-valve eligible, and the mandatory minimum does not apply.

The sentencing range that Reed asks the Court to go below then is already reduced based upon his lack of criminal history, the early stage of any discussion over a drug-importation scheme, and safety-valve eligibility. Given the nature of his offense, a Guidelines sentence is sufficient and not greater than necessary in this case.

B.  History and Characteristics of the Defendant

With regard to Reed's history and characteristics, Reed's Sentencing Memorandum makes much of his characteristics. He spends a great deal of time talking about his medical contributions to the community, the impact of the loss of his medical license and his reputation, his contentious divorce, his problems with a real-estate investment project, his knee injury that prevented him from exercising to reduce stress, and his mental and emotional health. *See* Def.'s Sent. Memo at 8-17. He would like the Court to in essence excuse his actions by giving him probation or not more than 18 months' imprisonment because these issues caused him to make bad decisions and exercise poor judgment. *See id.* at 18, 24, 38-41.

Reed's memorandum fails to address all of the positive things that Reed had in his life that most people, and certainly most defendants, never have. Reed is clearly a bright

person, who had the support and love of his parents as a child. Moreover, his family had the resources to support his education and allow him to become a well-respected and talented physician. Reed had a medical staff of employees who were loyal to him and made sure that his practice ran well. Reed has three children that love him. Reed was making more money each year than the overwhelming majority of Americans, thus allowing him to provide for himself and his family in extraordinary ways. It is clear that Reed had and was given tremendous opportunities in his life.

Yet despite these opportunities, Reed chose to engage in drug trafficking. And he now asks this Court for a substantial reduction in his sentence based on the problems in his life, while never once noting how fortunate he was. Reed is exceptional when it comes to other defendants, but not in the ways he argues. He is exceptional because he had more support, more opportunity, and more money than most other defendants and still chose to engage in criminal conduct. In the government's view, that makes him more, not less, culpable for his actions. He should not now further benefit from a below-Guidelines sentence.

    C.    <u>A Guidelines Sentence is Sufficient, but Not Greater than Necessary.</u>

A Guidelines range sentence is appropriate. As set forth in the Guidelines, their purpose is to further the basic purposes of criminal punishment – just punishment, deterrence, incapacitation, and rehabilitation. *See* Guidelines, Ch.1, Part 1(2). The purpose of Guidelines, therefore, is to promote the same factors set forth in 18 U.S.C. § 3553(a).

    1.    <u>The Seriousness of the Offense, Need to Promote Respect for the Law</u>

and Provide Just Punishment

Reed asks this Court to forget what put him in this situation - his purchase of two kilograms of cocaine and his further distribution of that cocaine in this community. He asks the Court to ignore that his actions encouraged Espinosa to seek a large quantity of cocaine from Texas and encouraged Melara to distribute cocaine to users in this area. Instead, he wants this Court to focus on the loss of his medical license, financial status, and family ties to find that a below-Guidelines sentence is just.

Were the Court to divert its attention away from his conduct and its consequences and sentence him below the Guidelines range, his sentence would not reflect the seriousness of this offense, promote respect for the law, or provide just punishment. As set forth above, the Guidelines are designed to take these factors into account, and in Reed's case, his range is already quite low, given his conduct, because of his lack of criminal history and safety-valve eligibility. Were the Court to go even lower, it would appear as if drug trafficking crimes were not taken seriously by the criminal-justice system when committed by persons of wealth and opportunity. Furthermore, such a sentence would be unjust punishment in so far as it would fail to fully account for Reed's actions and, in particular, the consequences of his actions on the larger community.

2. Adequate Deterrence

The government does not dispute that Reed's current contact with the criminal-justice system has likely deterred him from committing future drug crimes. There is little doubt that the circumstances he finds himself in now have been a shock to him and likely a strong

deterrent. However, deterring Reed is not the only consideration. As this Court is well aware, a sentence must deter the defendant <u>and</u> others from unlawful behavior.

To sentence Reed to anything less the Guidelines would serve little to no deterrent value for others. It would send a message that, if you are well educated, respected in the community, wealthy, and have no criminal history, the punishment you will face for engaging in drug trafficking will be slight. It would encourage such individuals to dabble in criminal activity because the benefit of doing so may outweigh the cost. This message is bad for our community and detrimental to society at large.

        3.      <u>Need to Protect the Public from Further Crimes of the Defendant</u>

As set forth above, the government does not believe that Reed poses a danger to the public in the future.

        4.      <u>Need to Provide the Defendant with Rehabilitation</u>

The government agrees that Reed could benefit from the drug-treatment and mental-health counseling that he could get in prison.

**IV. Conclusion**

For the reasons set forth above, the government respectfully requests that this Court sentence Reed within the applicable Guidelines range.

> Respectfully submitted,
>
> THOMAS F. KIRWIN
> United States Attorney
>
> */s/Gayle E. Littleton*
> GAYLE E. LITTLETON
> Assistant United States Attorney
> Massachusetts Bar No: 643649
> 30 West Government Street
> Panama City, FL 32401-2758
> (850) 785-3495

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been furnished by Notice of Electronic Filing (CM/ECF) to Marcia Shein, Esq., on this 9th day of November, 2009.

> */s/Gayle E. Littleton*
> GAYLE E. LITTLETON
> Assistant United States Attorney